The generic sentence enhancing predicates in 18 U.S.C. 2252a require that a defendant act with purpose of sexual gratification. But in Larios-Reyes v. Lynch, this court held, based on published opinions by Maryland and telecourts, that a defendant can commit Maryland third-degree sexual offense, quote, based on an adult's intentional touching of a minor's buttocks for a harmful, injurious, or offensive, but not sexually gratifying purpose. And, Larios-Reyes held, Maryland third-degree sexual offense, therefore, quote, includes much more Indeed, the Maryland statute is extraordinarily and uncommonly broad. Relevant here, Maryland third-degree sexual offense sweeps in conduct that, as the court said in United States v. Vado, is utterly non-sexual and far afield from conduct undertaken for purposes of sexual gratification. How do you handle the word relating to? Relating to certainly has a broadening effect, but as every court has recognized, there has to be a limiting principle to that word. It can't sweep in everything. Otherwise, it means nothing. And the limiting principle that a number of courts have settled on. But something, this is limited to relating to sexual abuse. And the question then is, regardless of the purpose, whether it's for gratification or for any other purpose, the statute is basically a sexual abuse statute, right? Well, it's labeled sexual offense, but the court in Billsworth, Maryland Court of Special Appeals in Billsworth, was very clear that those purposes, abuse, arousal, and gratification, are disjunctive and that abuse has a separate meaning from sexual gratification. Those cases do not say that the abuse under that statute has to have anything to do with sexual gratification. It's just abuse. And that is how this court interpreted that statute in Larios-Reyes. I think Larios-Reyes is really the key case for this court here. I'll let you continue. I assume at some point you're going to get to the waiver issue, because we don't get to any of this if we found that there's a waiver of the right to appeal. Sure, I'd be happy to address that, Your Honor. So the government, as I read their brief, makes two arguments for why this appeal is not waived. The first is that when the appeal waiver refers to the guidelines range, it means guidelines range as calculated by the district court. But that is not what the waiver says, and this court has already held in the Bowdoin case, which we cite in our brief, that the court will not read the words as calculated by the district court into a waiver when all it says is the guidelines range. The guidelines range does not mean that. It means the properly calculated guidelines range. So I think Bowdoin settles or resolves that part of their argument. Well, then there's no waiver at all in that circumstance, because if there's, if the court properly, if it's a proper guideline range, then there's no real review on it. If it's, the only occasion arises when you challenge the guideline range as improper, and the waiver, I thought, was intended to get rid of that. In other words, not have a fight over the calculation of guideline. Well, there are many things that sentence can challenge on appeal other than calculation of guidelines range, obviously. So the 3553A factors for one, the mandatory minimum for another. We note in our brief that this U.S. Attorney's Office very frequently puts the phrase guidelines range as calculated by the district court into its plea agreements. It didn't do that. Well, that's fair enough, but I think you're looking at the plea agreement in isolation. So there's a separate part of the plea agreement at page four that talks about the advisory sentencing guidelines and their application, and it says there that the defendant understands that the court will determine a sentencing guidelines range for this sentence, henceforth the advisory guidelines range, pursuant to the Sentencing Reform Act of 1984. Doesn't that add context to what we're talking about when we mean advisory guidelines range? So that refers to, throughout the rest of the agreement, there are discussions about adjustments to the guidelines range, levels, whatever. But that's what the government wanted the defendant to waive when he signed his plea waiver. The way to do that is to say the guidelines range as calculated by the district court. That's the best way to do it. That's not the only way to do it, and I'm asking whether or not if we take the agreement as a whole and consider that paragraph, whether that gets you to the same place. Well, not when this case has, I'm sorry, this court has held in the Bowdoin case that those words, you know, have to be spelled out expressly. That is what Bowdoin says. The words as calculated by the district court have to be spelled out in the waiver, otherwise that's not what the parties are bargaining. And, you know, Judge Grimm, who, you know, was a district court judge in this district for 10 years and reviewed probably hundreds of plea agreements in the course of his time on the bench and was infinitely familiar with parties in this district. Well, let me ask you about that because he did, after the fact, agree with you that the plea agreement didn't contemplate a waiver in this context, but that's not what he advised the defendant when he went over the plea agreement the first time around, right, during the actual plea colloquy. There was no discussion, no caveat about a carve out for this particular kind of plea. It seemed pretty generic that, hey, you get a sentence within the guidelines range and that's it. You're done. You can't appeal. Well, again, the judge didn't specify one way or the other, and I think the passing comment that he changed the plea hearing, you know, doesn't override language of the agreement itself. The comment was somewhat cryptic. It said, you know, it's above a level 30. He didn't say whether that means above the top of the range produced by a 30, above the bottom of the range produced by a 30. And in any event, you know, the extent there are ambiguities in these agreements, the government has all the bargaining power in this situation. They draft these agreements in a very, very easy way to make it clear that what Mr. Sturtz is reserving is the right to appeal the sentence above the range calculated by the court. The government chose not to do that, even though they do do that in other cases. I mean, again, I think there's ambiguity there that has to be resolved in Mr. Sturtz's favor. Okay. And the last thing I'll ask you, well, maybe not the last thing, but the next thing, is I think you've got a letter from the clerical court advising you to prepare to talk about a case that we found in our research. So, this is your opportunity to tell me why that case doesn't do your appeal. So, Your Honor, in that case, the guidelines range was light, and the district court imposed a 264-month sentence. So, this court, which 264 obviously is below the range, regardless of whether the court interprets that agreement the way Mr. Sturtz is arguing or the way the government is arguing. So, the court in that case had no occasion to decide what the accept clause in that agreement meant, because assuming it meant what Mr. Sturtz argued, the sentence still was not above any sentence within the range. And the defendant in that case was not arguing that the guidelines range was improperly calculated. He was making an argument that the district court ignored a mitigation argument and used religious language. But he wasn't challenging the guidelines calculation, and he wasn't saying that his appeal or that his sentence fell within the accept clause, because again, even on Mr. Sturtz's reading of the agreement, it didn't. So, I don't think the McGrath case affects this case at all, actually. It's just dealing with a case where, regardless of how you interpret the agreement, the sentence was below the bottom. But it does include, I think it's word for word, the precise language of the caveat that's included in this agreement, right? It is, it is, but the court in that case, I mean, unless I'm missing something, did not address either. No, that's fair, yeah. Didn't address either of the two issues that are... But there was a broad statement in that opinion that suggested that the court was perfectly fine with the text and language of that waiver as it was written. Sure, and we're not saying that the agreement is invalid because it was not knowingly and voluntarily agreed to. The defendant absolutely can enter into a free agreement like that. The question is, what does it mean? And the court in McGrath just didn't address what those words mean in relation to either of the two questions here. Whether the guidelines range means the range as calculated by the court, or what the phrase, any sentence within the guidelines range means. And I lied to you when I said that I didn't have any other questions, but why would the government enter into an agreement like this? It didn't seem to me that, as you interpret it, it received any benefit from the agreement. So I think, at least on the facts of this case, there actually is a real benefit. So as we explained in our brief, Mr. Sturtz suffers from a large number of very, very serious health conditions. And if he is sent to prison for anything even approaching the bottom of this guidelines range, he's almost certain to die in prison. So giving up the right to appeal any sentence below the bottom of the range is actually a meaningful concession. And because if Mr. Sturtz had gotten a 110-month sentence, for instance, he would have been able to appeal and raise a substantive reasonableness argument, which on the facts of this case, I think would have been a viable argument. Which is not to say, of course, that the court would have agreed. I don't know. But there's a strong argument that that sentence would have been unreasonable. And so giving up that right is a serious concession on the facts of this case. Why doesn't a public defender just not create a waiver to appeal? Well, this court has said they're enforceable. And so... You end up coming up here and we have to litigate them more. And you're talking about disadvantage to your client. It's a grand to waive these appeals. Well, the U.S. Attorney's Office, at least in our district, essentially makes that a requirement of most state rates. Unless the have to go to trial. And there are very serious downsides. Go to trial! Well, there are very serious downsides to that, Your Honor. There are some downsides. These appeal waivers came about 20, 30 years ago. Before that, there weren't any waivers of appeal. I mean, people got indicted and they pled guilty. They worked out a plea agreement without a waiver of appeal. And if they wanted to tell her something about it, they could appeal. They'd go up here and resolve it. I would love to go back to that system, Your Honor. That used to be the way things worked. And we didn't adhere to most of that. A lot of the criminal appeals end up with disputes over what the appeal waivers mean. Your Honor, the easiest solution to that... That's the big thing. We have to figure this out, right? I agree, Your Honor. Well, they disagree on the... They have different forms or they've negotiated different provisions? Yes, Your Honor. Those were the good old days. You have to litigate the meeting of the appeal waiver. Your Honor, the easiest... I don't think you've been around for the good... You look pretty young to be around for the good old days. Well, I've heard stories from veterans. Let me just ask you. I'm not sure I understand your position. And I'm just looking at 11A. I don't know if you have it. It'd be helpful. And there it says you're waiving on the ground that the criminal history triggers the mandatory minimum. So that's the explicit issue, right? So you're waiving as to that. And then you say, the next paragraph, you're waiving for any reason, including the establishment of an advisory guidelines range, which just above includes the issue we're talking about. And so then you go down to the exception. And the exception basically says, if it exceeds a sentence within the advisory guideline range resulting from offense 30, the guideline range computed was correctly computed and the sentence enhancement was... How do you read all that together? It sounds to me like the explicit issue before us was waived. So a couple of responses, Your Honor. First, in paragraph 11A, and the government made this argument in its motion below... I've set them aside. I'll hear from them. I just want to hear what your position is. No, no. Right. Understood. So 11A specifically says the defendant waives his right to appeal the conviction on any ground whatsoever. This is not a challenge to the conviction. It's a challenge to his sentence. And Judge, we made this argument below and Judge Grimm agreed in his... Except an element of the conviction is a mandatory minimum because we've treated different enhancements in the statutes, like in drugs, if you do X number of grams, it's one sentence. If you do another number of grams, it's a different element. So it's added on there or on the ground that defendant's criminal history does not trigger the statutory minimum. Which is the issue in this case. Did the prior convictions enhance it? And the court found that it did. And so that's explicitly within that paragraph, it seems to me. I'm just reading it. And then the next paragraph seems to include the same thing. And therefore, the reservation that you have must be accepting that within the waiver and say that something else happened beyond that. Your Honor, we are not asking the court to set aside Mr. Church's conviction. Just the sentence. And it is not at all clear that an indictment in a 2252A case has to include an allegation that someone has a predicate offense. In this case, the government did allege it. But I have seen other indictments where they don't because it's not clear that that's an element of the conviction. We're not challenging the conviction. The indictment had the separate allegation of this. And the reason it does is because the whole Apprendi line of cases where if it increases the penalty, then it becomes an element of offense. But it clearly is, it says the criminal history triggers a mandatory minimum penalty. So that is explicitly waived. And I don't think you get any cover by saying, oh, that relates to conviction. That is the mandatory sentence that we're talking about. So, I mean, Your Honor, notice paragraph A says, waives all rights pursuant to 28 U.S.C. 1291, which is the general appellate jurisdiction statute. And then B says, waives all rights expressly pursuant to 18 U.S.C. 3742, which is the sentencing statute. So these two paragraphs are clearly meant to address two different things. The conviction, whether it's valid at all. And the sentence, whether a particular sentence. It's not whether it's valid. It's the criminal history increases the penalty. And that is, as you know, under the Apprendi line of cases, anything that increases the penalty becomes an element. That's why it's under the conviction category, a paragraph. But it still is the very issue you're raising, that they should not have implied the mandatory minimum. Because the statute doesn't refer to predicates. They listed the predicates and it looks. Now, I guess your argument is basically that's an issue of conviction. But within the area of conviction covers the very penalty issue we're talking about, right? So, yeah, our position is that's a question of conviction, not sentence. But then also, if you look at the accept clause, it says he's waiving the right to challenge all these specific things, except in the following circumstances. Which must mean that in whatever those circumstances are, he can challenge those things. It wouldn't make sense to say- And it says any sentence that exceeds the advisory guidelines range, right? No, no, Your Honor. It says any sentence that exceeds any sentence within the guidelines range. Right. So the minimum sentence within the guidelines range would not exceed. And that's what you got, minimum. Well, that's assuming that the guidelines range means the range as calculated by the court. But as this court held in Bowdoin, that is not- Well, except you waived that in A. In other words, the mandatory minimum sentence is different. And it's included in the guidelines. But the court made that finding. Okay, I don't see how you get out of the fact that you got the lowest range of the sentence that was calculated and on an issue which you expressly waived. Because there is an accept clause. Well, the accept clause doesn't take the sentence was not in excess of that. Right. But when it's, as this court held in Bowdoin, when a plea waiver uses the phrase, the guidelines range, just make it that term, court interprets that to mean the correctly calculated- That exceeds any sentence within the guidelines range. The guidelines range included this enhancement. Yes, but the sentence was above other sentences below that, that were within what we claim was the correctly calculated fact. I see I'm almost out of time. So I will- Yeah. Serve the rest of the rebuttal, thank you. Sure thing. All right, Ms. Grossi. Good morning, your honors. And may it please the court, Leah Grossi on behalf of the United States. Mr. Sturtz was charged with possessing and distributing child pornography after having been previously convicted in Maryland for sexual offense in the third degree. Mr. Sturtz entered a plea agreement with the government in which he waived his ability to appeal except in the very limited situation in which he was sentenced above the guidelines range resulting from an offense level 30. That did not happen. You know, that's a strange language. I don't know whether that's your drafting or somebody's drafting, but when it says, to the extent it exceeds any sentence within the guideline range, well, it does exceed. Every sentence in the guideline range exceeds a possible sentence except the very lowest. What you really meant to say is any sentence that exceeds the top of the guideline range. And I think, your honor, there is ways to look at this that the Fourth Circuit has said. In order to look at the scope of the appeal waiver, you have to apply contract law and ensure that the parties each receive a benefit of the bargain. And as Judge Diaz pointed out, there was a big back and forth between the government and defense. My problem is we get this from various districts and different districts use, different U.S. attorneys use different language. And we comment on these things and we interpret them and we still get the same convoluted language that it's hard to interpret. I mean, plain English here says, to the extent that any term of offense exceeds any sentence within the guideline range. Uh, you didn't mean that. What you meant is exceeds the guideline range. And your honor, You wanted to put the top of the range rather than the bottom of the range. That's what you wanted and you're responsible for writing it down. If you're going to have these agreements, you got to write it down correctly. And we have also had cases that if they're ambiguous, it goes against the government. And I just, Do you recognize that principle? Yes, your honor. And I do understand that. The government's got more leverage at getting the provisions than the defendant does. There ought to be a little association of U.S. attorneys in the fourth circuit that has a meeting on a weekend and they get together and draft language that's perfectly clear and addresses the cases we have. And we would cut our litigation on this stuff than that. That's going to put us out of business. And then the defendants would quit reading to them and then we wouldn't have any of these flavors. Thank you, your honor. I will take that under advisement and volunteer myself for this weekend meeting. The lawyers would get more and better experience. They'd have to write more briefs. They'd get more oral arguments. The U.S. attorneys and the public defenders would get vastly more experience if they had to litigate the issues of importance rather than arguing about the meaning of language that they agreed to, but then disagreed on the meeting. Your honor, I think the reason that we drafted it this way is twofold. One, the reason we drafted it with regard to the offense level 30 and didn't list a specific sentence number is because there was an issue in this case whether his criminal history was a one or a two. And so the offense level 30 would have changed depending on if the district court had decided he was a criminal history one or a criminal history two. The 120 months which the government agreed to argue even in a situation where the statutory minimum was not reached in this case fell within both of those guideline range. If the criminal history was one, it was 97 months to 121 months. If the criminal history two, it was 108 to 135 months. Now that doesn't take into account the U.S. Sentencing Guidelines provision in section five which states that you have to- Well, that's fair enough. That's an argument for gearing it to a level 30 offense level. But then once you get to a properly calculated guideline range under 30, you're making an exception to every sentence in that range except the lowest sentence. And your honor, I believe the common sense- Is that the intent? Was that your intent? No, your honor. The intent was that the defendant cannot appeal any sentence over the offense level 30 guidelines range. And that was what the party agreed to. We don't apply your intent. We apply what the words say. Your honor, the contract law, it's going to contract law and the rules of contract constructions are designed to determine the intent of the parties. And that's a fourth circuit case from 2014. But this language is just clear. It says that you wait, reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the guideline range. You meant to say any sentence that exceeds the guideline range. And your honor, I submit that we did. It says exceed any sentence within the advisory guidelines range is the advisory guidelines range calculated by the district court. I understand. So let's assume the guideline range is 60 to 90 months. You're waiving his challenge. You're letting him challenge every sentence from 60 to 90 months except the 60 months. Because every sentence he gets over 60 months, it says any sentence that exceeds 60 months within the guideline range. So the judge hands down a 72 month sentence. He gets to argue that. I know, but you use the word within instead of in excess. That's just clear language, right? Within the guideline range. He gets to challenge any sentence within the guideline range. No. And your honor, I submit that is not the reading of this provision. And for a number of reasons. Well, how about the language? The language exceeds any sentence within. So it's saying exceeds any sentence within the advisory guidelines range of offense level 30. So exceeding any of those ranges within the offense level 30. Right. And it says he gets to challenge that. If it exceeds within that sentence. Any sentence. Not exceeds the range. Exceeds any sentence. Exceeds any sentence he receives that's over that offense level 30. Is what. No, don't say that. It says within. And I'm reading it as that it exceeds any sentence that he receives from the district court. He can, he reserves his right if it's any sentence that's within that advisory guidelines range. So it's exceeding any sentence from your example, 60 to 90. He can't appeal anything that's over the 90. And he's reserving his right to appeal anything over the 90. So how did the district court interpret that at the plea colloquy? Your Honor, at the plea colloquy that is what the district court said. Your interpretation. My interpretation, Your Honor. Was there any objection to that? There was not. And that's because both of the parties understood that's what it meant. And same thing with the McGrath case as you pointed out. The district court. In this case it probably doesn't make any difference because the 120 was within the guideline range as determined by the state enhancement, right? Correct, Your Honor. Even if you take what the defense is saying with regard to how that exception reads, the sentence he received was at the bottom of the guideline range as properly calculated by the district court. So mine was 108. If he received 108, Your Honor? I thought the guideline range started at 108. So that is before the statutory minimum that was applied. And so under the U.S. Sentencing Guidelines Section 5, it raises the bottom of the guidelines range. That's how you read it within the guidelines, the sentencing guidelines. The guidelines take into account the statutory minimum. Correct, Your Honor. Yes, under Section 5. So the boundaries of the plea agreement was a properly calculated guideline range. I'm sorry, could you say that again? What did the plea agreement say? The waiver. The waiver was... The properly calculated guideline range. Correct. And the properly calculated... The properly calculated guideline range is 120 to 135. That's correct, Your Honor. And your colleague here says it's 108 to 135. That's correct, Your Honor. And he waived that ability. Yeah. So we're up here arguing about a plea waiver, a bill waiver. You all can't write to be understood. We have to derive... We have to figure out the intention of the parties. But we need to have a trial to figure out the intention of the parties. Your Honor... Outside the plea agreement. Your Honor, I believe you can... Something. You can look... So we interpret it against the people that wrote it. You can look at the surrounding text, though. As this court has previously pointed out, this waiver of appeal was broad. The first part... It would take much less time just to try the case, probably. Your Honor, the defense approached the government to get into this plea agreement. There was a benefit to the defense. We dropped the distribution offense that we charged, which would have given him a 15-year mandatory minimum. Might be, might be. But if you can't write the plea agreement, that the court... lower court understands, and that we understand, then it's not worth anything to anybody. It's not... And it's certainly not worth anything to the justice system. Your Honor, I submit that this court actually did understand this exact same language in the McGrath case, as the court pointed out. This was the same district court judge, the exact same language. And in that opinion, in the Fourth Circuit opinion in 2020, it understood it to mean what I'm saying it to mean, that it was anything over the offense level 43. The parties understood this, but if you look at... Your position is McGrath resolves this? Your Honor, I believe McGrath resolves this, Blick resolves this, Pierce... Yes, Your Honor. Was that not dicta in McGrath? No, because they actually dismissed it on the appeal waiver. I will submit there are numerous Fourth Circuit precedents on this. As I mentioned, Blick, Butcher, McGrath, Pierce, all have language with that within language that Judge Niemeyer was talking about. And in all those cases, it interpreted that statute as being... Excuse me, that exception as being over the offense level that was listed within the plea agreement. The defense relies on this Bowdoin argument, Your Honor. The offense level gives rise to a range, right? Correct. So the offense level gives rise to a range. And the plea agreement says that he gets to challenge any sentence within that range that is above, that exceeds any... If he receives a sentence that exceeds any sentence in that range, then he can challenge it. So the only sentence does not exceed the range at the bottom. Your argument has to be in this regard, in this case, is that the 120 is the guideline range and is the lower part. And with respect to whether the 120 is a properly calculated guideline range, you look up above in the text where it says it weighs that issue, where you go to look in state law, the court's decision as to whether the state law enhances a sentence. Your Honor, I think that I submit that that's not the correct reading of the exception. But if you were to take into account the defense argument that that's how you read the statute, yes, they still lose because he received a 120-month sentence and that was the properly calculated range by the district court. He also waived the ability to challenge the properly calculated guideline range in the appellate waiver. And as you pointed out as well, it is explicit. The parties came together and negotiated and said, if you look at paragraph 10 of the plea agreement, the defendant reserved the right to argue at the time of sentencing that the defendant's criminal history triggered the recidivist enhancement. The parties agreed, you can argue this at the sentencing level, but you can't appeal this very issue. We put that into paragraph 11a. And now the defense is coming up and arguing this specific issue that we bargained in this plea agreement would have to be waived if he entered into this plea agreement and we dropped the distribution charge. All right. I think we understand your position. Do you have any more? If the court would like to hear my arguments as to the recidivist enhancement, I can proceed. Or if you would like to, you know... I'll leave it up to you. Okay. I want to make clear to the court that this recidivist enhancement is triggered by the defendant's prior conviction in Maryland for third-degree sexual offense. This conviction relates to aggravated sexual abuse, sexual abuse, or abuse of sexual conduct involving a minor. The defense tries to write out this relates to language, which makes it an expansive statute. It also tries to take out the way in which this court has interpreted aggravated sexual abuse on behalf of conduct involving a minor. This court has interpreted that language to say that abuse of sexual conduct involving a minor is the physical or non-physical misuse or maltreatment of a person under the age of 18 for a purpose associated with sexual gratification. The defense keeps trying to take out the associated language and the relates to language, and that was the Hardin case. I think it's pretty clear that this prior offense for sexual offense in the third degree fits within this trigger. It's called sexual offense in the third degree, and it involves numerous sexual parts of abuse and gratification. Correct. And the Maryland cases that the defense cites, even though it's raised it and said that it's only abuse and it doesn't relate to sexual gratification, the courts in those cases in Maryland have talked about how this particular statute in the Maryland legislature has looked at this statute in order to make it sexually oriented. These related to sexual injuries. It had a sexual effect. All of the offenses within sexual offense in the third degree relate to sexual contact. It involves different parts of the anatomy that relate to sex and are associated with sexual gratification. I think there's also a red herring here because the defense keeps pointing to four circuit cases that don't deal with this particular statute. They're talking about cases involving the Immigration and Nationality Act, U.S. Sentencing Guidelines, and that's not what we have here today. We have a very different statute, and we actually have very different language. Defense starts talking about sexual abuse of a minor and defining that term, but that's not what is in the statute that we're looking at. We're looking at abusive sexual conduct of a minor. Very different. And I just want to point that out to the court because I think the defense keeps using those cases to talk about this statute, which is very different and has a very different line of cases. I think it's important to look at the Lockhart decision, which came down in 2016 from the Supreme Court dealing with this particular statute and the fact that the Supreme Court looked at those federal offenses in Chapter 109A and said that there is a correlation between the way in which you list those state convictions, aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor and how those track the languages, the language of the 109A statute. And so for those reasons, Your Honor, I believe that the court should dismiss this appeal based on the plea agreement waiver or in the alternative, affirm the district court's decision. Harding is probably our best case on this. Harding is the most recent case, Your Honor. Yes. All right. Thank you very much. Thank you. All right. Mr. McGrath. Thank you, Your Honor. Just briefly, a couple of points about McGrath. The defendant in that case stipulated that the guidelines range from the defense level was a 43 and no matter how you calculate the guidelines, 43 always leads to a sentence or a range of life. So there was no dispute about whether the guidelines were correctly calculated or not because there's only one way to calculate a 43. So McGrath just did not address this question of whether guidelines range in a plea agreement means correctly calculated guidelines range for what the court calculated. Second, Judge Grimm, as I said, he's a district court judge for 10 years, has read hundreds of these plea agreements. He had both these cases? He did, yes. He had the McGrath case too? Yes, he did. I don't think he's a judge anymore. That's right, Your Honor. He stepped down at the end of last year. Yeah, so that disqualifies him, doesn't it? He had substantial experience at the time he... Well, I know. I have the highest respect for Judge Grimm. I'm not... I'm just being a little funny, but I... He got a promotion. No, I understand, Your Honor. The point is, he knows as well as anyone what the practice in the District of Maryland is. He knows that the lawyers in our office and the lawyers in the government's office are repeat players who use certain kinds of stock language over and over in different cases. But why wasn't this then brought out during the... when Judge Grimm was talking to the defendant, your client, about the plea agreement? I mean, none of this was... This argument about this exception, he didn't say any of that to him. So as I think Judge Niemeyer was alluding to a second ago, the phrase, the term that the judge used, Judge Grimm used in the plea call plea is somewhat opaque. It says the sentence above a level... or above a level 30. But that doesn't specify whether that means above the top of the range from a level 30, above the bottom of the range, any sentence... Well, you could use some language that said just simply outside the guidelines. Right. You could have... Yes, he could have said that. It could be understood. Yes, but that's not what Judge Grimm said. But the question I have... I'm talking about your plea agreement, rather than I am... And I raised with the government is... It seems to me that the district court made a finding that the guideline range was 120 to 135. And so however you read that exception, the 120 sentence you got did not exceed any sentence in the guideline range. It was equal to the lowest. And your argument is, well, the guideline range is not the 120. It's the level 108. And that's when I go above where it talks about the district court will determine the guideline ranges on the previous page also. And that this specific issue, whether it's enhanced by state law is within the waiver. And you say that it's not in the waiver because it's a conviction issue, but it's a conviction issue only because it is a sentencing issue that is built in under the apprendee business. But the issue still is identified specifically to be, was there a state predicate offense? Was he a recidivist? And the district court was going to determine that, and that was going to be waived. Now, if that's waived, then the court correctly ruled that the sentencing range was 120 to 135. I think that's her position. She reads, she would like to rely on the language that says it's basically any sentence that exceeds the guideline range. And that would be that simple. But she's going to convene a conference and resolve this. And put you on the program. Yes. All right. Two quick points, I know I'm over my time. The first is, again, if we were asking this court to set aside Mr. Sturtz's conviction entirely and say he has no, this felony is wiped off his record, then I think the paragraph 11a would be correct. But whether you label it conviction or not, the issue, the issue we have is whether the predicate offense enhances the sentence. And that issue is explicitly described in paragraph 11a. It is, Your Honor. And again, no, that paragraph limits what he can challenge with regard to whether the conviction is valid. It is a separate paragraph from what sentencing arguments he can make on it. No, don't you think it's a two-step process. He's waived that. And if he's waived that, then that determines the sentencing range. That does determine the sentencing range. And the sentencing range was calculated to be 120 under the guidelines, 120 to 135. Right. And again, our position is that when the plea agreement says the guidelines range, it means what this court said in voting. The defendant is allowed to argue that that is not the correct guidelines range, and therefore the waiver does not appeal. And the way you all operate negotiating these plea agreements with the waiver in there, you do that before you have the plea proceedings and the sentencing. And he's waiving things with respect to the guideline range that he doesn't know about. Right. He's not a pig in a poke. Right. And you're letting him do it. Well, again, there's, in a lot of these cases, including this one, there's government has an extraordinary amount of power. And they've got all that leverage. Yes. And so this is the final point I'll make, which is I think what you were getting at, Judge King, which is that all this litigation and argument about what do these words mean? How does this clause fight that clause? There's an easy solution to all of that. And that is for the government to write a clear plea agreement that says exactly and expressly what is being waived. And the government didn't do that. Well, you have to help them write it. You've got a client in the middle of it. You can negotiate it. You have to help them write it. They are writing it down. Maybe they have the leverage to more leverage than you do. But you've got some leverage too. Absolutely. I'm not saying that we're talking. You're articulate and you know how to write things down. We certainly do, Your Honor. And we do negotiate these things. But again, when there's ambiguity, that's construed against them. Anyway, thank you, Your Honor. I'm seeing over my time. We normally come down and greet counsel. And in my case, this would be especially fun because we have the Maryland lawyers, a demonstration of how our Maryland lawyers stand out. You guys have done a great job. And we'll have to greet you from the bench at this point. Next time you come down, we'll shake your hands. Thank you very much.
judges: Paul V. Niemeyer, Robert B. King, Albert Diaz